```
DMB:RMT
F.#2012R00116

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - X    12-94 M

IN THE MATTER OF THE APPLICATION              AFFIDAVIT IN SUPPORT
FOR A SEARCH WARRANT FOR: ONE GRAY             OF APPLICATION FOR
MOTOROLA CELLULAR TELEPHONE,IMEI               A SEARCH WARRANT
001702097765780; ONE BLACK HTC CELLULAR
TELEPHONE, MEID 270113179916700110; ONE
GRAY LG CELLULAR TELEPHONE, MEID
268435460015579369; ONE WHITE NOKIA
CELLULAR TELEPHONE, IMEI
359341038199548; ONE BLACK BLACKBERRY
CELLULAR TELEPHONE, IMEI
356543034888486; ONE BLACK MOTOROLA
CELLULAR TELEPHONE, IMEI
001701025694840; ONE RED HTC CELLULAR
TELEPHONE, IMEI 354029030089255; ONE
BLACK HTC CELLULAR TELEPHONE, IMEI
359637039592627; ONE GRAY BLACKBERRY
CELLULAR TELEPHONE, MEID
268435458807811481; ONE BLACK AND GRAY
BLACKBERY CELLULAR TELEPHONE, MEID
268435459710863055, ONE BLACK PALM
CELLULAR TELEPHONE, MEID
270113178414165445 ONE RED AND BLACK
SAMSUNG CELLULAR TELEPHONE, MEID
268435459513067712; ONE BLACK AND MAROON
KYOCERA CELLULAR TELEPHONE, MEID
268435457814030003; ONE BROWN AND SILVER
MOTOROLA CELLULAR TELEPHONE, IMEI
001705666254810; ONE BLACK AND RED
MOTOROLA CELLULAR TELEPHONE, IMEI
001702111100770; AND ONE BLACK AND
SILVER LG CELLULAR TELEPHONE, MEID
268435460010414481

- - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:
```

WAYNE JACOBS, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

Upon information and belief, there is probable cause to believe that there will be located within the following devices:

- ONE GRAY MOTOROLA CELLULAR TELEPHONE, IMEI 001702097765780, seized during the course of the arrest of JARH WREH (the "WREH TELEPHONE");

- ONE BLACK HTC CELLULAR TELEPHONE, MEID 270113179916700110, seized during the course of the arrest of JAMELLE HARPER (the "HARPER TELEPHONE");

- ONE GRAY LG CELLULAR TELEPHONE, MEID 268435460015579369 and ONE WHITE NOKIA CELLULAR TELEPHONE, IMEI 359341038199548, seized during the course of the arrest of ROB JONES (the "JONES TELEPHONES");

- ONE BLACK BLACKBERRY CELLULAR TELEPHONE, IMEI 356543034888486 and ONE BLACK MOTOROLA CELLULAR TELEPHONE, IMEI 001701025694840, seized during the course of the arrest of ANTHONY BRITT (the "BRITT TELEPHONES");

- ONE RED HTC CELLULAR TELEPHONE, IMEI 354029030089255; ONE BLACK HTC CELLULAR TELEPHONE, IMEI 359637039592627; and ONE GRAY BLACKBERRY CELLULAR TELEPHONE, MEID 268435458807811481, seized during the course of the arrest of ROBERT FIELDS (the "FIELDS TELEPHONES");

- ONE BLACK AND GRAY BLACKBERY CELLULAR TELEPHONE, MEID 268435459710863055, and ONE BLACK PALM CELLULAR TELEPHONE, MEID 270113178414165445, seized during the course of the arrest of JASON QUINN (the "QUINN TELEPHONES"); and

- ONE RED AND BLACK SAMSUNG CELLULAR TELEPHONE, MEID 268435459513067712; ONE BLACK AND MAROON KYOCERA CELLULAR TELEPHONE, MEID 268435457814030003; ONE BROWN AND SILVER MOTOROLA CELLULAR TELEPHONE, IMEI 001705666254810; ONE BLACK AND RED MOTOROLA CELLULAR

     TELEPHONE, IMEI 001702111100770; and ONE BLACK AND SILVER LG CELLULAR TELEPHONE, MEID 268435460010414481, seized from 33 Water Street, Staten Island NY (the "33 WATER STREET TELEPHONES")

(collectively, the "SUBJECT TELEPHONES")[1] evidence, fruits and instrumentalities of a conspiracy to distribute crack cocaine in violation 21 U.S.C. §§ 846.

  The source of my information and the grounds for my belief are as follows:

  1. I have been an FBI Special Agent for more than seven years and am currently assigned to the C-30 Squad, where I am tasked with investigating violent gangs, as well narcotics trafficking, money laundering and other offenses. As such, I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I have participated in numerous narcotics and gang investigations during the course of which I have (a) conducted physical and wire surveillance; (b) executed search warrants at locations where drugs, drug proceeds

---

[1] All of the SUBJECT TELEPHONES have remained in the custody of the federal agents since they were seized on or about June 8, 2011. The devices are currently in the Eastern District of New York, although they will likely be transferred outside the district so that they can be examined by electronic forensic experts.

3

and records of narcotics transactions have been found; (c) reviewed and analyzed numerous taped conversations and records of drug traffickers; (d) debriefed cooperating drug traffickers; (e) monitored wiretapped conversations of drug traffickers and reviewed line sheets prepared by wiretap monitors; and (f) conducted surveillance of individuals engaged in drug trafficking. Through my training, education and experience, I have become familiar with (a) the manner in which illegal drugs are imported and distributed; (b) the method of payment for such drugs; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement.

      2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Because the purpose of this affidavit is limited to demonstrating probable cause for the requested warrant and order, it does not set forth all of my knowledge about this matter. In addition, when I rely on statements made by others, such statements are set forth in part and in substance unless otherwise indicated.

I.   Technical Background

      3. Based on my training, experience and a physical examination of the SUBJECT TELEPHONES, I know that the SUBJECT TELEPHONES are all "wireless telephones." A wireless telephone

(or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      4.   As further described in Attachment B, this application seeks permission to locate not only electronic data on the SUBJECT TELEPHONES that might serve as direct evidence of narcotics distribution, but also forensic electronic evidence that establishes how the devices were used, the purpose of their

5

use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on the SUBJECT TELEPHONES because:

      a.   Data on an electronic device can provide evidence of a file that was once on the device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, email programs, and chat programs store configuration information on the device that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the device was in use. Electronic devices can record information about the dates files were created and the sequence in which they were created.

      b.   Forensic evidence on an electronic device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such

6

as file creation and last-accessed dates) may be evidence of who used or controlled the electronic device at a relevant time.

        c.    A person with appropriate familiarity with how an electronic device works can, after examining this forensic evidence in its proper context, draw conclusions about how devices were used, the purpose of their use, who used them, and when.

        d.    The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on an electronic device that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, such evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how the device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

        e.    Further, in finding evidence of how an electronic device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on an electronic device. For

example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

II. The Investigation

5. HARVEY CHRISTIAN, also known as "Black" ("H. CHRISTIAN" and "HC"), ANTHONY CHRISTIAN, also known as "Nitty" ("A. CHRISTIAN"), ROBERT FIELDS, also known as "Boy Boy" ("FIELDS"), JAMIE BOOKER, also known as "Momo" ("BOOKER"), ANTHONY BRITT, also known as "N-O" ("BRITT"), JAMELLE HARPER, also known as "B-Realz" ("HARPER"), ROBERT JONES, also known as "Rob" ("JONES"), JASON QUINN, also known as "Q" ("QUINN"), and JARH WREH ("WREH"), together with others (collectively, the "CHRISTIAN BROTHERS CREW"), were involved in the sale and distribution of crack cocaine on the North Shore area of Staten Island for at least the period between May 2011 and June 2011.

6. By way of general background, based on information collected from multiple confidential informants and telephone communications intercepted pursuant to judicially authorized wiretaps, investigators determined that the CHRISTIAN BROTHERS CREW ran their drug distribution operation in the following manner. Members of CHRISTIAN BROTHERS CREW maintained one or more "work phones," which customers used to contact them or their workers so that customers could arrange to either pick up drugs

or have drugs delivered by members of the conspiracy. Further, members of the CHRISTIAN BROTHERS CREW exercised control and influence over other drug crews in their neighborhood on Staten Island through the use and threat of violence. Notably, H. CHRISTIAN, A. CHRISTIAN, FIELDS and BRITT are all members of the Bloods street gang.

      7.   Between January 2011 and March 2011, confidential informants under the supervision of New York City Police Department and the FBI made three controlled drug purchases from JONES and H. CHRISTIAN. The drugs purchased on each of those occasions field-tested positive for cocaine and appeared, based on agents' and/or officers' training and experience, to be crack cocaine.

      8.   On April 4, 2011, pursuant to March 31, 2011 orders from the Honorable Rosylnn R. Mauskopf, United States District Judge for the Eastern District of New York, agents began monitoring calls over a mobile phone used primarily by H. CHRISTIAN. The government renewed its wiretap on that phone on May 5, 2011 and also began monitoring a telephone belonging FELIX GRANT ("GRANT" or "FG"), an individual who was determined to be a powder cocaine and crack cocaine supplier for the CHRISTIAN BROTHERS CREW. On May 18, 2011, agents began monitoring a separate mobile phone that belongs to FIELDS.

9

9. Those intercepted calls indicated that H. CHRISTIAN, A. CHRISTIAN, FIELDS, BOOKER, BRITT, HARPER, JONES, GRANT, QUINN and WREH were engaged in the sale and distribution of crack cocaine on Staten Island. A representative sample of such calls is summarized below in sum, substance and part:

    a. On April 20, 2011, H. CHRISTIAN made an outgoing call to GRANT [CALL 13262 (HC)]. During that call, based on my training and experience, and having monitored numerous other calls between those individuals, I believe H. CHRISTIAN and GRANT were coordinating H. CHRISTIAN's return to GRANT of approximately 65 grams of low-quality crack cocaine to be exchanged for higher-quality crack cocaine. During that call, the following exchange occurred:

> HC: YO, WHAT'S UP?  MY MAN, ROB, YOU KNOW ROB, RIGHT?
>
> FG: HUH?
>
> HC: MY MAN, ROB.  YOU KNOW, THAT LITTLE DUDE (U/I)?
>
> FG: WHAT?
>
> HC: . . . THE LITTLE . . .
>
> FG: WHICH ONE?
>
> HC: ROB.  USED TO LIVE IN THE (U/I). . .
>
> FG: USED TO LIVE (U/I).  USED TO BE OVER THERE ON BURKS STREET?
>
> HC: YEAH THE (U/I) LITTLE NIGGA.

```
FG: YEAH, YEAH.  I KNOW WHO YOU TALKIN'
ABOUT.

HC: HE ABOUT TO COME SEE YOU IN A (U/I).

FG: ALRIGHT, HE GOT THE DRUGS?

HC: YEAH.

FG: ALRIGHT, WHAT YOU GIVE HIM, 6-5 YOU SAID?
 HELLO?

HC: YEAH.
```

b. In an intercepted call on May 18, 2011 A. CHRISTIAN and H. CHRISTIAN discussed possible drug suppliers [CALL 22930 (HC)]. During calls on May 18, 2011 and May 19, 2011 A. CHRISTIAN and H. CHRISTIAN discussed drug prices [CALLS 22936, 23394 (HC)]. In addition, during a call on April 8, 2011, A. CHRISTIAN indicated to H. CHRISTIAN that he was holding money or drugs that he had collected from JONES [CALL 8066 (HC)].

c. In an intercepted call on April 4, 2011, FIELDS and H. CHRISTIAN spoke about their plan to pool money to purchase drugs [CALLS 6323 (HC)]. In addition, during calls on April 16, 2011 and May 27, 2011, FIELDS and H. CHRISTIAN discussed GRANT and other drug suppliers [CALL 11404(HC)] and the quality of drugs that they were offering [1085 (RF)].

d. In an intercepted call on May 29, 2011, BOOKER and H. CHRISTIAN discussed the quality of BOOKER's management of H. CHRISTIAN's drug phone [CALL 27235 (HC)]. In

addition, during a series of calls on May 9, 2011, H. CHRISTIAN directed and coordinated BOOKER's making a drug-related payment to GRANT [CALLS 19432, 19495 (HC)].

   e. In intercepted calls on May 26, 2011, BRITT discussed with H. CHRISTIAN and FIELDS the possibility of robbing another individual after placing a large drug order with him [CALLS 25936 (HC), 943 (RF)]. In a call on May 25, 2011, BRITT communicated with GRANT about purchasing crack cocaine, [CALL 4725 (FG)]. During calls on May 13, 2011, BRITT facilitated certain of H. CHRISTIAN's drug purchases from others [CALLS 21162, 21166 (HC)]. In addition, during a call on May 8, 2011, H. CHRISTIAN told BRITT that although H. CHRISTIAN didn't have drugs at the time, "Boy Boy could probably make due for you" [CALL 19259 (HC)].

   f. In intercepted calls on May 27, 2011 and May 13, 2011, H. CHRISTIAN and HARPER discussed drug transactions wherein H. CHRISTIAN apparently purchased drugs from HARPER [CALL 26551 (HC)] and where they discussed the quality of drugs HARPER had available for sale and the price of those drugs [CALL 21068 (HC)].

   g. In intercepted calls on April 4, 2011, April 7, 2011 and April 8, 2011, JONES and H. CHRISTIAN discussed how much crack cocaine JONES had remaining for sale and how much

money he had collected for H. CHRISTIAN through drug sales [CALLS 6322, 7586, 8196 (HC)].

   h. In intercepted calls on May 23, 2011, H. CHRISTIAN and WREH discussed WREH's sale of drugs on H. CHRISTIAN's behalf and WREH's remaining drug inventory [CALLS 24601, 24723 (HC)].

   i. In intercepted calls on April 4, 2011, H. CHRISTIAN and QUINN discussed the manner in which each was packaging crack cocaine for resale.  QUINN advised H. CHRISTIAN, in sum and substance, that he does not like selling small quantities of crack cocaine because they bring too much attention and can result in people going to "jail."  H. CHRISTIAN stated, in sum and substance, that he makes $750 off the sale of 10 grams, and QUINN explained that he needs to make $800 off the sale of 10 grams.  Based on my training and experience, I believe that H. CHRISTIAN and QUINN were referring to the sale of 10 grams of crack cocaine during that portion of the conversation.  QUINN and H. CHRISTIAN also discussed how FIELDS had adversely affected the market for crack cocaine on Staten Island by selling larger quantities of crack cocaine for $20.

III. The Seizures of SUBJECT TELEPHONES

  10. On June 6, 2011, a grand jury in the Eastern District of New York returned an indictment charging H.

CHRISTIAN, A. CHRISTIAN, FIELDS, BOOKER, BRITT, HARPER, JONES, QUINN, WREH and others with conspiracy to distribute crack cocaine in violation 21 U.S.C. §§ 846, in United States v. Booker et al., 11 CR 425 (ENV). On that same day, Magistrate Judge Viktor V. Pohorelsky signed arrest warrants for those individuals. Agents arrested H. CHRISTIAN, A. CHRISTIAN, FIELDS, BOOKER, BRITT, HARPER, QUINN and WREH on June 8, 2011, and JONES on June 9, 2011.

    11. Agents arrested FIELDS at his residence on Staten Island. After placing FIELDS under arrest, agents asked FIELDS where his cellular phone was located. In response, FIELDS directed agents to certain cellular phones in his residence and in his car parked outside. FIELDS also provided the agents with his car keys so agents could recover those phones. Agents then seized the FIELDS TELEPHONES.[2]

    12. Agents arrested BRITT at his residence on Staten Island. After placing BRITT under arrest, agents asked BRITT where his cellular phone was located. In response, BRITT directed agents to the BRITT TELEPHONES, which were in BRITT's bedroom. Agents then seized the BRITT TELEPHONES.

---

[2] Agents seized a total of five cellular telephones from FIELDS. However, one of those telephones had no data card, and another had never been removed from its box. The government does not seek authorization to search those two phones.

13. Agents arrested HARPER at his residence on Staten Island. During the course of placing HARPER under arrest, agents observed the HARPER TELEPHONE in plain view sitting on a dresser and seized that telephone.

14. Agents arrested JONES on a street corner on Staten Island after he was observed by NYPD officers. At the time he was taken into custody, JONES had the JONES TELEPHONES in his possession. The JONES TELEPHONES were then seized incident to the arrest.

15. Agents arrested WREH while he was walking to his car parked on the street on Staten Island. At the time he was taken into custody, WREH had the WREH TELEPHONE in his possession. The WREH TELEPHONE was then seized incident to the arrest.

16. Agents arrested QUINN at his residence on Staten Island. During the course of placing QUINN under arrest, agents asked QUINN where his cellular telephone was located and QUINN directed agents to certain cellular phones in his residence. The agents then seized the QUINN TELEPHONES.

17. On June 7, 2011, Judge Pohorelsky signed a search warrant for 33 Water Street, Staten Island NY. That warrant and its supporting affidavit are attached hereto as Addendum A. On June 8, 2011, agents executed that search warrant. They arrested

A. CHRISTIAN and BOOKER, who were asleep within. They also seized a quantity of crack cocaine and other drug paraphernalia.

18. During the course of executing that warrant, agents also seized the 33 WATER STREET TELEPHONES, among others. Agents had authorization to search those devices pursuant to the June 7, 2011 search warrant. However, because of the volume of devices seized on June 8, 2011, electronic forensic specialists were unable to examine those devices prior to the expiration of the June 7, 2011 warrant.

IV. The Requested Authorization

19. As discussed in Part I, and based on my training, experience and involvement in this investigation, I know that cellular telephones belonging to narcotics traffickers may contain call logs of recently contacted numbers, as well as electronic address books storing telephone numbers and other contact information for others involved in the scheme. Such telephones also frequently have the ability to store photographs and videos -- a feature I know from my training and experience that can be used by narcotics traffickers to show quantities of cash and drugs in the course of negotiating narcotics transactions. Further, modern cellular telephones also often contain programs that allow users to access the Internet and

16

email, both of which may be used by individuals involved in narcotics trafficking.

20. In addition, because all of the above-mentioned defendants were captured over judicially authorized wiretaps discussing narcotics and narcotics distribution, there is a heightened likelihood that the SUBJECT TELEPHONES contain evidence of those individuals' drug distribution activities.

21. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant for which I am applying would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. Because this application seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a device. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

17

## Conclusion

WHEREFORE, I respectfully request that a search warrant issue authorizing federal agents, with proper assistance from other law enforcement officials, to search the SUBJECT TELEPHONES for evidence, fruits, and instrumentalities of a conspiracy to distribute crack cocaine, in violation 21 U.S.C. § 846.

s/ WAYNE JACOBS

_____
Wayne Jacobs
Special Agent
Federal Bureau of Investigation

Sworn to before me this
27th day of January, 2012

S/ JOAN AZRACK
_____
THE HONORABLE JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK